## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Joseph G. Rosania, Jr.

| | |
|---|---|
| In re:<br><br>JEFFREY THOMAS MULLINS,<br>SSN: xxx-xx-2813,<br>CHARITY DAWN MULLINS,<br>SSN: xxx-xx-4579,<br><br>        Debtors. | Case No. 16-13773-JGR<br>Chapter 7 |
| TRANS-WEST, INC., a Colorado Corporation dba Transwest Truck Trailer RV,<br><br>        Plaintiff,<br><br>v.<br><br>JEFFREY THOMAS MULLINS,<br>CHARITY DAWN MULLINS,<br><br>        Defendants. | Adv. Pro. No. 16-01282-JGR |

### ORDER REGARDING POST-JUDGMENT BRIEFS

THIS MATTER is before the Court on the simultaneous briefs filed on September 9, 2025, by Judgment Creditor Trans-West Inc. ("Trans-West") (Doc. 320) and Phenyx Media, LLC ("Phenyx") (Doc. 319) pursuant to the Court's order issued at the continued telephonic hearing on August 14, 2025 (Doc. 316).

### INTRODUCTION

This Adversary Proceeding illustrates the difficulties faced by bankruptcy courts with certain post-judgment enforcement efforts. Fed.R.Bankr.P. 7069 incorporates Fed.R.Civ.P. 69 which turns to state law for execution on judgments. Under Colorado law, a charging order may issue to seize a judgment debtor's economic interest in a limited liability company through the attachment of distributions. Distributions to which a judgment debtor may be entitled to receive can become an area of dispute. In other courts, a common resolution of these disputes involves the appointment of a receiver or special master to examine if appropriate distributions are being made by the limited

liability company. Unfortunately, 11 U.S.C. § 105(b) prevents a Bankruptcy Court from appointing a receiver in a case under the Bankruptcy Code and unlike many of the Federal Rules of Civil Procedure, Fed.R.Civ.P. 53, allowing for the appointment of a master, is not incorporated into the Federal Rules of Bankruptcy Procedure.

## PROCEDURAL BACKGROUND

This Adversary Proceeding was commenced on July 19, 2016. Trans-West filed a Complaint against Jeffrey Thomas Mullins ("Jeffrey") and Charity Dawn Mullins ("Charity") contesting the dischargeability of claims under 11 U.S.C. § 523(a)(2) for false pretenses, false representation, and actual fraud; 11 U.S.C. § 523(a)(4) for fraud as a fiduciary, embezzlement, or larceny; and 11 U.S.C. § 523(a)(6) for willful and malicious injury.

A four-day trial on the Complaint was commenced on November 19, 2019, concluding on November 22, 2019, when the matter was taken under advisement.

On September 30, 2020, the Court entered Judgment in favor of Trans-West and against Jeffrey and Charity, jointly and severally, awarding damages in the amount of $1,000,000 excepted from discharge under 11 U.S.C. § 523(a)(2)(A) for actual fraud, § 523(a)(2)(A) for false representations, and § 523(a)(6) for willful and malicious injury. In addition, pursuant to C.R.S. § 18-4-405, the damages excepted from discharge under 11 U.S.C. § 523(a)(6) constituted civil theft and were trebled to $3,000,000 for a total judgment in the amount of $4,000,000.

The actions giving rise to the findings of nondischargeability were committed by Jeffrey in connection with his employment at Trans-West. Under a theory of civil conspiracy, joint and several liability for the entire nondischargeable debt was extended to Charity.

The Judgment against Jeffrey was not appealed. Charity appealed the Judgment entered against her to the Tenth Circuit Bankruptcy Appellate Panel, which affirmed the Judgment. A stay was not obtained, and Trans-West began collection actions while the appeal was pending.

Jeffrey and Charity are employees of Phenyx and Charity owns a 15% membership interest in the company. Beginning in March of 2021, Writs of Garnishment were issued against Jeffrey and Charity's wages from Phenyx and on March 2, 2021, a Charging Order was entered against Phenyx with respect to Charity's membership interest.

Phenyx intervened and moved to set aside the Charging Order. A revised Charging Order was entered specifying that Trans-West is entitled to the economic benefit of the membership interest but cannot compel distributions or otherwise participate or interfere in the management of Phenyx; acknowledging Phenyx can assert applicable privileges in association with the production of documents; and clarifying exempt property is not subject to the Charging Order.

Four years later, on March 21, 2025, Trans-West filed a Motion of Judgment Creditor Pursuant to C.R.S. § 7-58-605(2)(b) for an Order Directing Phenyx Media LLC to Comply with the Court's Charging Order and to Produce Records ("Motion to Compel") (Doc. 301).  On March 21, 2025, the Judgment Creditor also filed a Motion of Judgment Creditor Pursuant to C.R.S. § 7-58-605 for Sanctions Against Phenyx Media LLC for Violation of Court's Charging Order ("Sanctions Motion") (Doc. 302).  On April 8, 2025, Phenyx filed a Response to the Sanctions Motion (Doc. 305) and a Response to the Motion to Compel (Doc. 306).

Trans-West alleged Phenyx failed to comply with the Charging Order by providing redacted General Ledgers without an associated privilege log, failing to produce tax documents, and failing to provide books and records.  At particular issue were redactions made to Phenyx's General Ledgers for 2022, 2023, and 2024 (January-June).

The Motion to Compel specifically sought:

1. Unredacted General Ledgers for 2022, 2023, and 2024 provided that to the extent redactions were made, a privilege log was provided by Phenyx identifying the basis for any redactions.

2. All receipts, invoices, and backup documentation substantiating the legitimate business purposes for meals, supplies, travel, meeting expenses, production expenses, office meals, and health/vision/dental contained in the General Ledgers.

3. All documentation substantiating that the vehicles used by Charity were purchased and used for business purposes.

4. 2024 Phenyx tax return.

In its response, Phenyx claimed it submitted the following financial information to Trans-West:

a. 2020 Balance sheet
b. 2021 Tax Return
c. 2022 Tax Return
d. 2023 Tax Return
e. 2024 Tax Return
f. Charity Mullins & Phenyx loan agreement
g. GL 2022 Redacted
h. GL 2023 Redacted
i. Jan.-Jul. 2024 General Ledger redacted
j. Mullins 2024 1040 CO Tax Return
k. Mullins 2024 1040 US Tax Return
l. Phenyx Operating Agreement
m. 2021-2024 P&L
n. 2021 Balance sheet
o. 2021 P&L
p. 2022 Balance sheet
q. 2022 P&L

3

      r.  2023 Balance sheet
      s.  2023 P&L
      t.  2024 Balance sheet
      u.  2024 P&L

Phenyx admitted that it failed to provide a privilege log in connection with the redactions made to the General Ledgers, but argued the redactions were made to protect client and employee information. The response included a privilege log relating to the General Ledger redactions, but the privilege log only referred to a "trade secret" privilege and failed to identify any specific entries.

Phenyx argued that Trans-West's request seeking invoices and backup documentation exceeded the scope of the Charging Order and that information regarding the company vehicles was provided.

On April 15, 2025, the Court conducted a telephonic preliminary hearing on the matter. At the hearing, counsel for Phenyx represented the 2024 Tax Return had been prepared and produced.

The parties disagreed on which documents had actually been produced. Phenyx agreed that any missing documents represented to have been produced would be delivered to the Judgment Creditor on or before April 22, 2025. Phenyx further agreed to provide copies of the General Ledgers to the Court by April 22, 2025, for an *in-camera* review with redactions being highlighted for reference.

The redacted General Ledger for 2024 was timely provided to the Court and later, a link to the 2022 and 2023 General Ledgers was provided. The 2022 and 2023 General Ledgers were completely unredacted and not highlighted. After another request, a link to highlighted General Ledgers was provided to the Court. The 2024 General Ledger was 138 pages. The 2023 General Ledger was 210 pages. The 2022 General Ledger was 199 pages.

It became apparent to the Court that the highlighted General Ledgers would need to be compared to the redacted General Ledgers provided to Trans-West. The redacted General Ledgers were submitted to the Court, but a side-by-side review of the documents revealed that the highlighted items did not necessarily correlate with the redactions.

The redactions made by Phenyx to the General Ledgers were not limited to "trade secrets." However, certain redactions were appropriate as they covered customer information and employee information. In general, the redactions were made to:

(1) Entries concerning payments received from clients;

(2) Expenses related to company payroll (the General Ledger reflects garnishments were paid on wages paid to Charity and Jeffrey);

(3) Payments made to, and received from, commercial lenders; and

4

(4) Expenses, loans, and other transactions related to other employees (not Charity and Jeffrey).

Other redactions were made to entries that did not identify clients, other employee information, or information concerning commercial lending. The redactions covered various expenses, including but not limited to meals, travel, entertainment, retail purchases, and automobile expenses that appeared to be unrelated to trade secrets or employee privacy.

The Court ordered Phenyx to provide updated redacted General Ledgers and supplement the privilege log by identifying the basis for each redaction made in the General Ledgers not covered by a trade secret or employee privacy privilege. In the event the privilege log was not sufficient, Phenyx would be required to provide unredacted entries to Trans-West.

A continued telephonic hearing on the matter was held on July 8, 2025. At the hearing, the Court was advised that Phenyx provided unredacted copies of the General Ledgers to Trans-West. Nevertheless, disputes remained as to whether other documents subject to the Charging Order had been produced.

The Court ordered Trans-West to file with the Court a Motion to Clarify or Modify the Charging Order identifying with specificity additional documents sought to be produced and allowed Phenyx the opportunity to respond.

In its Motion for Clarification, Trans-West requested the Court to order Phenyx to produce:

(a) All receipts, invoices, and backup documentation substantiating the legitimate business purpose for meals, supplies, travel, meeting expenses, production expenses, office meals, and health/vision/dental contained in the General Ledgers;

(b) All documentation substantiating that the vehicles purchased for Charity are for business purposes; and

(c) Authorization to depose Phenyx after a review of the requested backup documentation.

Trans-West argued the unredacted 2022 General Ledger reflected that Phenyx made $1,151 in equity payments to Charity, which constitute distributions. Trans-West also identified questionable expenditures it claimed might constitute disguised distributions:

- Employment benefits for medical spa treatments, optometrist expenses, and gym memberships totaling $9,340.66
- Insurance payments to Allstate totaling $243.03
- Insurance payments to Progressive totaling $4,611.68
- Meals totaling $62,815.80
- Gas totaling $9,304.05
- Travel and travel meals totaling $83,061.42

- Supplies and office supplies totaling $66,397.55

Trans-West argued that production of the back-up documents, including receipts, would allow for the determination of whether Phenyx had disguised distributions as other expenses.

In response, Phenyx argued that it complied with the production of documents required under the Charging Order and that the additional document production exceeded the Charging Order's scope.

Phenyx acknowledged under its operating agreement, Charity would receive distributions of 15% of the net profits or losses of Phenyx.

Phenyx argued it is a legitimate marketing business with nationwide clients, maintains a full-time in-house team of professionals in leased commercial space and is entitled to deduct legitimate business expenses.

Phenyx argued certain payments made to Charity constitute "guaranteed payments" under 26 U.S.C. § 707(c). Phenyx argued the guaranteed payments are not treated as distributions but as ordinary income for tax purposes.

With respect to the vehicles, Phenyx argued the company purchased the vehicles, they are used for legitimate business purposes, and costs associated with the vehicles are legitimate business expenses.

Phenyx offered, as a compromise, to provide access to its business records for inspection at its place of business during regular business hours subject to certain conditions: the inspection would be limited to two working days up to six hours per day; Trans-West would be allowed to make copies of relevant documents; the inspection would be subject to a confidentiality and nondisclosure agreement; and any subsequent depositions would be subject to applicable discovery rules.

The further continued telephonic hearing was held on August 14, 2025. After considering the Motion to Clarify the Charging Order and the Response thereto, the Court, with the agreement of the parties, ordered simultaneous briefs regarding the issue of alleged imputed distributions and potential remedies.

**TRANS-WEST'S BRIEF**

Trans-West alleges that Phenyx has made imputed distributions to Charity through the payment of personal expenses, including paying for her children's tuition, paying her medical bills, paying for gym membership, and buying vehicles for her personal use. In addition, Trans-West alleges imputed distributions may have been made through the payment of meals, travel, and household expenses.

To determine the exact amount of the imputed distributions, Trans-West seeks an Order authorizing discovery into Phenyx's financial records and requiring the depositions of Phenyx representatives. Once the total amount of imputed distributions is calculated,

Trans-West seeks an order requiring the payment by Phenyx to Trans-West in an amount equal to the value of imputed distributions made to Charity.

Trans-West argues that courts have broad authority to make all orders necessary to enforce charging orders, primarily relying on *EarthGrains Baking Companies, Inc. v. Sycamore et al.*, 2022 WL 433486 (10th Cir. Feb. 14, 2022).

EarthGrains obtained a multimillion-dollar judgment against Leland Sycamore and the Sycamore Family Bakery. A charging order against Leland's 48% interest in the Sycamore Family LLC was entered in favor of EarthGrains.

The members of the LLC consisted of Leland's immediate family. His wife also held a 48% interest, and the remaining 4% interest was held equally by his four children.

Over a four-year period, no distributions were made to EarthGrains on account of Leland's 48% membership interest in the LLC.

The district court found the LLC in contempt and appointed a receiver to investigate distributions that should have been subject to the charging order. The receiver submitted a report to the district court identifying imputed distributions that should have been paid to EarthGrains.

The LLC's assets generally consisted of rental properties, investment properties, and financial investments (including cash). The report identified certain expenditures for business costs that did not constitute distributions. The report identified cash distributions made to members and imputed distributions in the form of rents for real property occupied by LLC members or their relatives. Legal fees paid by the LLC were treated as distributions made to Leland. In addition, Leland obtained a loan in the approximate amount of $2.1 million that was secured by property owned by the LLC valued at approximately $2.9 million. Leland defaulted on the loan, and it was anticipated the property pledged as security would be foreclosed upon. The receiver construed the loss of the pledged property as an imputed distribution to Leland. In total, the receiver allocated distributions that should have been made to Leland in the approximate amount of $3.8 million.

The LLC held cash in the approximate amount of $1.1 million. The receiver requested an order from the district court authorizing the payment of the cash to EarthGrains in partial satisfaction of the unpaid distributions, and sought authority to liquidate LLC assets to generate funds to pay the remaining balance of approximately $2.7 million.

The district court entered an order adopting the receiver's report, directing the payment of the cash to EarthGrains, and authorizing the liquidation of the LLC's assets. The LLC appealed.

The Tenth Circuit held that the district court acted within its broad authority to enter orders necessary to effectuate the charging order, including authorizing the liquidation of LLC assets. However, the Tenth Circuit held the district court committed clear error when it adopted the receiver's determination that the value of the LLC property pledged as collateral against the defaulted loan could be construed as an imputed distribution prior to an actual foreclosure sale of the property.

Trans-West suggests this Court can authorize discovery to determine the amount of imputed distributions made to Charity and order Phenyx pay to Trans-West the same.

## PHENYX'S BRIEF

Phenyx denies imputed distributions were made to Charity. Phenyx maintains it adheres to Generally Accepted Accounting Principles ("GAAP") with respect to its expenditures. Phenyx asserts it is entitled to operate its business without interference from Trans-West and, as long as it complies with the terms of its operating agreement and applicable IRS regulations in its recording of expenditures, Trans-West cannot recategorize legitimate business expenditures as distributions to Charity. Phenyx addresses the purported imputed distributions as follows:

Guaranteed Payments

Phenyx argues that certain payments made to Charity constitute "guaranteed payments" as the payments are for services or the use of capital determined without regard to the income of the partnership referencing 26 U.S.C. § 707(c).

Guaranteed payments are deductible as business expenses but are passed on as ordinary income to the recipient.

Phenyx argues the guaranteed payments were properly accounted for, comport with GAAP, and are not distributions to which the Charging Order attached.

Cosmetic Appointments

Phenyx claims the cosmetic appointments referenced in the General Ledgers are part of an exchange for services in connection with a collaborative marketing relationship. Phenyx claims Charity and other employees receive treatments from a client:

> These services are not benefits. Rather, they are strategically utilized in the development of branded photo and video content, as well as in research and development for ongoing or upcoming campaigns. The services often form part of before- and after-documentation; testimonial video shoots; and hands-on creative testing to ensure the accuracy and effectiveness of the visual marketing assets Phenyx produces for the client.

8

Phenyx claims the expenditures incurred in connection with the cosmetic appointments are legitimate business expenses and do not violate the operating agreement or GAAP.

The Automobiles

Phenyx claims it purchased the vehicles for business use. Moreover, the Infiniti QX60 is financed through Rickenbaugh Infiniti and cosigned by Christopher Frazier, another member of Phenyx.  The expenses incurred in connection with vehicles are legitimate business expenses are accounted for properly under GAAP.

Employee Benefits

Phenyx argues as part of its compensation packages, it offers gym memberships and comprehensive health insurance.  The benefits are not exclusive to Charity and are legitimate business expenses.

Meals, Supplies, and Travel Expenses

Phenyx operates out of a leased commercial premises and employs approximately thirteen W-2 employees and several 1099 contractors.  It provides marketing services to over 50 clients nationwide.  Expenses attributed to meals, supplies, and travel are justified within the scope of Phenyx's work.  While some of the purchases made through Amazon or DoorDash are tied to a business credit card in Charity's name, the purchases are made by Phenyx for legitimate business purposes.  Again, Phenyx claims the expenses are legitimate, comport with GAAP, and are authorized by the Operating Agreement.

Phenyx maintains it has complied with the Charging Order and that Charity has not received distributions because after the dedication of legitimate business expenses, Phenyx has no profits to distribute to any of its members.

**ANALYSIS**

In Colorado, charging orders arise under Colo.Rev.Stat. 7-80-703, which provides:

> On application to a court of competent jurisdiction by any judgment creditor of a member, the court may charge the membership interest of the member with payment of the unsatisfied amount of the judgment with interest thereon and may then or later appoint a receiver of the member's share of the profits and of any other money due or to become due to the member in respect of the limited liability company and make all other orders, directions, accounts, and inquiries that the debtor member might have made, or that the circumstances of the case may require. To the extent so charged, except as provided in this section, the judgment creditor has only the rights of an assignee or transferee of the membership interest. The membership interest charged may be redeemed at any time before foreclosure. If the sale is

9

> directed by the court, the membership interest may be purchased without causing a dissolution with separate property by any one or more of the members. With the consent of all members whose membership interests are not being charged or sold, the membership interest may be purchased without causing a dissolution with property of the limited liability company. This article shall not deprive any member of the benefit of any exemption laws applicable to the member's membership interest.

The Colorado Supreme Court discussed charging orders in *JPMorgan Chase Bank, N.A. v. McClure* (citations omitted), "A charging order is a statutorily created remedy that simultaneously (1) allows a judgment creditor to realize the value of a judgment debtor-LLC member's distributional interest in an LLC (i.e., the debtor-member's right to profits and distributions from the LLC) and (2) protects the LLC's ability to continue to operate and the interests of its other members."

*JPMorgan Chase Bank, N.A. v. McClure*, 393 P.3d 955, 958 (Colo. 2017).

A charging order creates a lien on the economic value that flows from a membership interest in an LLC. "The lien attaches to the judgment debtor's distributional interest and diverts to the judgment creditor, until the judgment is satisfied, the right to receive any distributions that would otherwise have been paid to the debtor-member." *Id.*

"To be enforceable and effective, a charging order that compels an LLC to act must bind the LLC such that ignoring the order would subject the LLC to remedial action. See Bishop, LLC Charging Orders, 12 No. 3 Bus. Entities, at 21. To hold otherwise would be to suggest that the charging order is effective even though it has no legal force against the LLC." *Id.* at 961.

Phenyx intervened in this matter conferring personal jurisdiction to the Court. To the extent Phenyx has engaged in conduct to circumvent the Charging Order through disguised distributions, this Court within its authority to enter orders, as necessary, to give effect to Charging Order including requiring Phenyx pay to Trans-West the value of imputed distributions.

Nevertheless, the Court is mindful of balancing Trans-West's right to attach Charity's distributional interests from Phenyx with Phenyx's right to operate free of interference from Trans-West.

*EarthGrains* is distinguishable. This Court does not have the ability to appoint a receiver or master to independently examine the proprietary of the business expenditures and/or accounting methodology. *EarthGrains* involved a charging order created under Utah law which is similar but not identical to Colorado law.

More significantly, the LLC in *EarthGrains* was comprised of family members: husband (48%), wife (48%), and their four children (4%). The membership interests in

Phenyx are held by Christopher Frazier (70%), Randall Eddington (15%), and Charity (15%). It seems axiomatic that a family-owned LLC would be more prone to manipulation than one comprised of unrelated businesspersons.

Trans-West has identified numerous expenses it alleges are suspect and may represent disguised distributions to Charity. Trans-West requests further discovery, including the production of back-up documentation and depositions of business representatives with respect to the claimed business expenses.

Phenyx claims the business expenses are legitimate and appropriate. No allegations have been made that distributions were paid to the other members of Phenyx and not to Charity.

Without making any factual findings, the Court notes that some of the claimed business expenses appear questionable. For example, guaranteed payments generally consist of management fees or renumeration for services provided to the business. The alleged guaranteed payments made to Charity reference third party expenses as opposed to services provided to Phenyx.

Other questionable expenses include payments related to cosmetic services Phenyx alleges were incurred as part of a comprehensive marketing program.

As the matter stands, it is not ripe for adjudication. The resolution of the multiple disputed material facts will require an evidentiary hearing. Moreover, the dispute involves whether the expenses have been accounted for properly, requiring expert witness testimony. Accordingly,

IT IS ORDERED that the provisions of Fed.R.Civ.P. 26 shall apply to this contested matter, subject to the provisions of this Order.

IT IS FURTHER ORDERED that the parties adhere to the following deadlines:

1. Discovery. Fact discovery must be completed by **January 30, 2026.** "Completed" means that all document inspections and depositions are concluded on or before the discovery completion date. Phenyx shall provide access to its business records for inspection at its place of business during regular business hours subject to certain conditions:

   (a) The inspection shall be limited to two working days per week up to six hours per day;

   (b) Trans-West shall be allowed to make copies of relevant documents;

   (c) The inspection shall be subject to a confidentiality and nondisclosure agreement;

   (d) Depositions shall be subject to Fed.R.Civ.P. 30 as incorporated in Fed.R.Bankr.P. 7030; and

(e) Any discovery disputes are subject to the provisions of L.B.R. 7026-1(d).

2. Expert Witnesses. Disclosures and written reports required by Fed.R.Civ.P. 26(a)(2) must be made and exchanged on or before **February 13, 2026.** If evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Fed.R.Civ.P. 26(a)(2)(B), disclosure must be made on or before **February 27, 2026.** Expert discovery must be completed by **March 13, 2026.**

A telephonic status and scheduling conference to consider the matter will be held on **Tuesday, March 17, 2026, at 11:00 a.m., in Courtroom B**, U.S. Bankruptcy Court, U.S. Custom House, 721 19th Street, Denver, Colorado 80202.

Counsel/parties shall appear by telephone at the hearing. The following instructions are provided for appearing by telephone and connecting to the conference call line:

Dial **833-568-8864 US Toll-free or 833-435-1820 US Toll Free**, a few minutes prior to commencement of the hearing. It is a computerized system, and you will be prompted to input a Meeting ID. The Meeting ID is: **161 324 5580.** You will then be connected into the conference.

Failure to connect to the conference in a timely manner may preclude your participation in the hearing. If you are unable to connect after following the instructions provided, please call the Judge's case management team at 720-904-7300 and leave a name and the telephone number where you can be reached, and the Court will return the call.

Dated this 13th day of November, 2025.

BY THE COURT:

_____
Joseph G. Rosania, Jr.
United States Bankruptcy Judge